NOT FOR PUBLICATION                                               (Doc. Nos. 19, 20)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                          :
INTERNATIONAL UNION OF OPERATING          :
ENGINEERS, LOCAL 542,                     :
                                          :
      Plaintiff,                          :  Civil No. 13-3204 (RBK/JS)
                                          :
      v.                                  :
                                          :  **OPINION**
DELAWARE RIVER AND BAY                    :
AUTHORITY,                                :
                                          :
      Defendant.                          :
_____   :

**KUGLER**, United States District Judge:

Before the Court is the motion of the Delaware River Bay Authority (the "DRBA") for summary judgment, and the cross-motion for summary judgment of the International Union of Operating Engineers, Local 542 ("Local 542"). The DRBA seeks to vacate an arbitration decision in favor of Local 542, and Local 542 seeks to enforce the decision. For the reasons set forth below, the Court finds that subject matter jurisdiction does not exist over this civil action, and therefore the Complaint will be **DISMISSED**, and the motions for summary judgment will be **DISMISSED AS MOOT**.

I.     BACKGROUND AND PROCEDURAL HISTORY

    A.    **Background of the Dispute**

This matter arises out of a labor dispute involving the painting of vessels owned by the DRBA. The DRBA is a bi-state agency of the states of New Jersey and Delaware

that operates a variety of transportation systems, including the Cape May-Lewes Ferry. DRBA's Statement of Undisputed Material Facts ("SUMF") ¶ 1. In 2006, Local 542 was first recognized, and was selected as the bargaining representative for certain DRBA job titles. Id. ¶¶ 4, 18.[1] The parties entered into a collective bargaining agreement (the "CBA"), which was subsequently replaced by a successor agreement in 2010. Id. ¶¶ 4, 5. One of the job titles represented by Local 542 is that of "Vessel Maintenance Specialist." Id. ¶ 4. At the time Local 542 was recognized, painting of ferry vessels was divided between Vessel Maintenance Specialists and Seasonal Vessel Painters, who are not union employees. Id. ¶ 16; Local 542's response to SUMF ¶ 16. In 2006, the DRBA employed nine Vessel Maintenance Specialists, but between 2006 and 2013, all nine left that position. SUMF ¶¶ 18, 19. As the Vessel Maintenance Specialists left, the DRBA did not replace them, but instead had the painting work performed by Seasonal Vessel Painters. Id. ¶ 20; Local 542's response to SUMF ¶ 20. The Seasonal Vessel Painters are paid less than the rate for Vessel Maintenance Specialists, and they do not receive employment benefits. Local 542's Statement of Undisputed Material Facts ¶ 16.

On August 8, 2012, Local 542 filed a grievance over this practice, alleging that the DRBA circumvented the CBA by assigning bargaining unit work to seasonal workers. SUMF ¶¶ 23-24. After arbitration of the grievance, the arbitrator, Lisa C. Charles, found that the DRBA had effectively supplanted the position of Vessel

---

[1] Employees of the DRBA do not have the right to organize and collectively bargain under the National Labor Relations Act or under its state counterparts. See Del. River & Bay Auth. v. Carello, 222 A.2d 794, 799 (Del. Ch. 1966); Del River & Bay Auth. v. N.J. Pub. Emp. Relations Comm'n, 112 N.J. Super. 160, 166 (App. Div. 1970). Thus, the DRBA's employees may only collectively bargain with the agreement of the DRBA.

Maintenance Specialist with seasonal workers. Id. ¶ 29. Her award, dated April 29, 2013, had three principal elements. First, the DRBA was ordered to cease and desist the practice of supplanting the Vessel Maintenance Specialists with seasonal workers. Second, it was ordered to reclassify the seasonal employees who had been painting the vessel as Vessel Maintenance Specialists. Third, it was ordered to provide the seasonal workers with the Union wage rate, along with benefits, retroactive to the date the grievance was filed. See Arbitration Opinion and Award at 9.

The DRBA has complied with the cease-and-desist order. It has done so by using Ordinary Seamen, who are represented by the Marine Engineers' Benevolent Association, to paint the vessels. SUMF ¶ 21. However, pursuant to this litigation, it seeks to vacate the portion of the arbitrator's award that has the effect of requiring it to recognize the former seasonal workers as permanent employees subject to the CBA, and to compensate them with retroactive wages and benefits.

Because the basis of the Court's subject-matter jurisdiction was not clear, after the summary judgment motions were fully briefed, the Court requested that both parties brief the issue of subject-matter jurisdiction. The parties have each complied, and both take the position that subject-matter jurisdiction exists under 28 U.S.C. § 1331.

B.  **Bi-State Agencies**

The DRBA is a bi-state entity that was created in 1962 when the States of New Jersey and Delaware entered into an interstate compact (the "Compact") pursuant to the Compact Clause of Article I of the Constitution. It was created to construct and operate crossings between New Jersey and Delaware, including bridges and ferry services, and

3

also operates aviation facilities in New Jersey and Delaware.  See Del. River & Bay Auth. v. Int'l Org. of Masters, Mates and Pilots, 45 N.J. 138, 140 (1965); Riley v. Del. River & Bay Auth., 661 F.Supp.2d 456, 460 (D. Del. 2009).

As a Compact Clause entity, the DRBA is "not subject to the unilateral control of any one of the States that compose the federal system." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 42 (1994).  Bi-state entities "typically are creations of three discrete sovereigns: two States and the Federal Government." Id. at 40.  They are created to "address interests and problems that do not coincide nicely either with the national boundaries or with State lines." Id. (internal citations omitted).  They are "beholden neither to the states, since they gave up sovereignty for efficiency's sake, nor to Congress, since, once approved, Congress has no more executory powers over compact entities that it does over any private corporation." Brust v. ACF Indus., LLC, Civ. No. 11-4839, 2011 WL 6756921, at *3 (D.N.J. Dec. 21, 2011) (quoting Matthew S. Tripolitsiotis, Bridge Over Troubled Waters:  The Application of State Law to Compact Clause Entities, 23 Yale L. & Pol'y Rev. 163, 167 (2005)).

## II.    LEGAL STANDARD

It is well-established that "federal courts are courts of limited jurisdiction," and that "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  Federal courts have a constant obligation to satisfy themselves of their subject-matter jurisdiction and to decide the issue sua sponte.  See Liberty Mutual Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995).  They

must therefore "raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011).  Rule 12(h)(3) of the Federal Rules of Civil Procedure requires a federal court to dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction."  Federal courts have subject matter jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, often referred to as "federal question" jurisdiction.  28 U.S.C. § 1331.

Under 28 U.S.C. § 1331, federal question jurisdiction exists only in cases in which "a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 28 (1983).  Thus, the plaintiff's complaint must provide the basis for federal jurisdiction by raising issues of federal law.  See Krashna v. Oliver Realty, Inc., 895 F.2d 111, 113 (3d Cir. 1990).

**III.    DISCUSSION**

**A.  Jurisdiction under Federal Labor Law**

The Court initially observes that jurisdiction does not exist under the federal labor laws.  Federal courts frequently have jurisdiction over labor disputes like the instant one pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 et seq.  However, bi-state agencies such as the DRBA are not "employers" within the meaning of the LMRA, because they are "political subdivisions."  29 U.S.C. § 152(2).  Federal courts accordingly lack subject-matter jurisdiction over LMRA claims arising from alleged

violations of a collective bargaining agreement.  See Stinson v. Delaware River Port Auth., 935 F. Supp. 531, 536-39 (D.N.J. 1996) (citing Crilly v. Southeastern Pennsylvania Transportation Auth., 529 F.2d 1355 (3d Cir. 1976)) (dismissing LMRA claims against the Delaware River Port Authority ("DRPA"), another bi-state agency, for lack of subject-matter jurisdiction); Johnson v. Port of Seattle, 261 F.Supp.2d 1243, 1245 (W.D. Wash. 2003) (indicating that "where a political subdivision is a party to the CBA, § 301(a) [of the LMRA] does not afford a basis for the exercise of federal jurisdiction"). The parties do not dispute that the DRBA is not an "employer" under the LMRA, and neither party asserts that jurisdiction exists under the federal labor laws.

### B. Construction of an Interstate Compact

Both parties argue that subject matter jurisdiction exists because this case involves the construction of an interstate compact.  See DRBA's Br. on Jurisdiction at 7 (Doc. No. 30); Local 542's Br. on Jurisdiction at 5-6 (Doc. No. 31).  It is well-settled that "[t]he construction of a bi-state compact that has been consented to by Congress pursuant to the Compact Clause presents a federal question." Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n, 311 F.3d 273, 275 (3d Cir. 2002).

The issue, then, is whether this suit involves the construction of the Compact that created the DRBA.[2]  An initial review of the Complaint suggests that it does not.  The Compact is mentioned one time in the Complaint, in connection with a description of the background of the DRBA and its creation in 1962.  Compl. ¶ 3.  The Complaint does not

---

[2] The Compact was entered into by New Jersey and Delaware pursuant to Article I, Section 10, clause 3 of the United States Constitution.  It is codified in the annotated statutes of both states.  See N.J.S.A. 32:11E-1; 17 Del. C. § 1701.  The Compact was subsequently made effective by Congressional approval.  Pub. L. No. 87-678 (1962).

cite or quote any portion of the Compact. It is clear from the Complaint that the principal issue in this action is the scope of the CBA. Id. ¶¶ 6-20. The parties' respective motions for summary judgment, which cogently set forth the legal issues in dispute, similarly mention the Compact only in the context of background material, and neither brief cites any section of the Compact or argues that the Compact is dispositive of any matter at issue.

The parties indicate that courts within this district have previously exercised jurisdiction over the resolution of employment contract disputes involving the Compact, because they "arise from the Compact." DRBA's Br. on Jurisdiction at 7. Both parties have now cited Article VII(f) of the Compact, which grants the DRBA the authority to "enter into contracts . . . with any individual, firm or corporation deemed necessary or advisable for the exercise of its purposes and powers." 17 Del. C. § 1701; N.J.S.A. 32:11E-1. Local 542 also cites Article VII(e), which permits the DRBA to "appoint or employ . . . officers, agents . . . and employees" that are necessary to perform its duties. Local 542 essentially indicates that because the Compact provides the authority for the DRBA to hire employees and enter into contracts, disputes related to its employees and contracts necessarily implicate the Compact.

The Court believes that the parties have read the cases where federal jurisdiction existed over disputes involving a bi-state entity too broadly. All of the cases cited by the parties where courts found that subject-matter jurisdiction existed involved some actual interpretation of a bi-state compact, and not merely construction of a contract entered into by a bi-state agency.

Both parties cite Spence-Parker v. Delaware River and Bay Authority, 616 F.Supp.2d 509 (D.N.J. 2009). In Spence-Parker, the plaintiff filed an employment suit against the DRBA, which had previously employed her as its Chief Human Resources Officer. Id. at 512. The plaintiff filed her suit in New Jersey Superior Court, asserting statutory causes of action under New Jersey law as well as a claim for breach of contract. Id. at 514. The DRBA removed the case to federal court and moved to dismiss. Id. Judge Simandle indicated that the court possessed subject matter jurisdiction, indicating that "[t]he construction of a bistate compact is 'a question of federal law.'" Id. at 516 (citing IUOE, Local 542, 311 F.3d at 279 n.4). However, the issues in that case turned squarely on construction of the Compact. A principal issue in Spence-Parker was whether, under the Compact, "the states' surrender of sovereignty encompassed exposing the DRBA to suit" under New Jersey statutory law. Id. at 518. Similarly, with respect to the plaintiff's common law claims, the Court looked "to the language of the Compact and the intent of the compacting states" to determine whether Delaware and New Jersey consented to the surrender of the portion of their sovereignty necessary to enter into contracts. Id. at 522.

Local 542 cites other cases that it believes support federal "jurisdiction over matters affecting labor relations between labor unions and bi-state agencies established by interstate compacts." Local 542's Br. on Jurisdiction at 7. However, like Spence-Parker, each of these cases involve an actual dispute over the nature and provisions of an interstate compact itself. See IUOE, Local 542, 311 F.3d at 279-80 (reviewing the language of a bi-state compact and determining what constitutes amendment of the

compact); Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567 (3d Cir. 2002) (determining that the compact creating the DRPA did not require it to collectively bargain with unions, based upon the issue-preclusive effect of a state court judgment); Fraternal Order of Police v. Delaware River Port Auth., 924 F.Supp.2d 574, 577 (D.N.J. 2013) (addressing the question of whether the DRPA's compact required it to participate in arbitration in collective bargaining negotiations, and indicating that "[t]he crux of this case is a legal dispute regarding how the DRBA compact should be interpreted"); Pievsky v. Ridge, 98 F.3d 730 (3d Cir. 1996) (interpreting the DRPA compact's provisions for appointing and removing commissioners). Each case cited by the parties in support of jurisdiction thus involved substantial analysis of a compact itself.

As the Ninth Circuit has found, when a case involves "a judicial determination of the nature and scope of obligations set forth" in a bi-state compact, the case arises under federal law. League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 507 F.2d 517, 522 (9th Cir. 1974). The Court finds that here, none of the issues raised by the parties require the Court to determine the "nature and scope" of any of the DRBA's obligations under its Compact. This is evident from the fact that neither the Complaint nor the parties' summary judgment briefs refer to any provisions of the Compact.[3] Rather, the dispute would call for the Court, if jurisdiction were found to exist, to determine the scope of the arbitration clause in the parties' CBA, which is not a creature of federal law merely because it was entered into by a bi-state agency.

---

[3] Similarly, the eight-page arbitrator's opinion that is at issue does not mention the Compact at all, except to indicate in a background paragraph that the DRBA operates pursuant to a compact between New Jersey and Delaware. See Arbitration Opinion and Award at 2.

If the Court were to accept the arguments of the parties, every breach of contract action involving a bi-state agency would arguably arise under federal law. As the parties' argument goes, the DRBA would not have been able to enter into a CBA save for the clause in the Compact allowing it to enter into contracts, and thus this suit involves the construction of the Compact. The same logic would apply to any contract entered into by the DRBA. But, as the parties acknowledge, courts within this district have held that not every breach of contract action arises under federal law, merely because the DRBA or another bi-state agency is a party. In one such case, an asbestos claim against the DRPA was remanded to state court, after the court found that "[t]he mere fact that the DRPA is sued does not always implicate the compact," Brust v. ACF Indus., LLC, Civ. No. 11-4839, 2011 WL 6756921, at *4 (D.N.J. Dec. 21, 2011). The Brust court also found that because "claims that seek redress for tortious conduct or breach of contract often impact only the external operations of the DRPA without implicating the compact . . . at least some common law claims do not require construction of the compact." Id. In Brust, the court found that even though the DRPA's compact might provide a defense to liability (which is not the case in the instant matter), construction of the compact was not implicated because the federal question would be merely a defense, and not part of the well-pleaded complaint. Id. at *5-6. See also Martin v. Port Auth. Transit Corp., Civ. No. 09-3165, 2010 WL 1257730, at *2 (D.N.J. Mar. 25, 2010) (finding that the court had supplemental jurisdiction under 28 U.S.C. § 1367 over breach of contract and promissory estoppel claims asserted in connection with a withdrawn offer of employment by a DRPA subsidiary). Indeed, if the Court were to find that jurisdiction exists here, it would be

hard to imagine any suit against the DRBA that could not be said to arise under federal law.  Virtually any action taken by the DRBA could ultimately be traced back to the Compact, as evidently it can take no official action at all except as the Compact authorizes.

In short, nothing about this suit over the arbitrability of labor disputes involves "[t]he construction of a bi-state compact."  IUOE, Local 542, 311 F.3d at 275.  "Construction" means "the act or process of interpreting or explaining the sense or intention of a writing [or] the ascertainment of a document's meaning in accordance with judicial standards." Black's Law Dictionary 355 (9th ed. 2009).  The instant dispute does not turn on the meaning or intention of anything in the Compact.  It is abundantly clear, and agreed upon by the parties, that the Compact allowed the DRBA to enter into a collective bargaining agreement with the Plaintiffs.  That is the extent of the Compact's relevance to this case.  It is the construction of the CBA, which is one step removed from the Compact, that is at issue.

### C.  Federal Common Law

Local 542 has also suggested that its "complaint alleges that the DRBA violated federal common law when it refused to comply with the terms of an arbitration award . . . ."  Local 542's Br. on Jurisdiction at 5.  Local 542 does not elaborate on what federal common law the DRBA allegedly violated, nor does the Court observe any direct or implicit reference to federal common law in Local 542's Complaint.

An action "arises under federal common law if, inter alia, plaintiff's requested relief requires the interpretation and application of federal judge-made law."  Northeast

11

Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 157 (3d Cir. 1985).  In Local 542's summary judgment brief, it made no argument for the application of any federal common law.  Rather, it indicated that Delaware and New Jersey law are in conformity with respect to review of labor arbitration awards, and thus there is no choice-of-law issue, because whether the Court were to apply New Jersey or Delaware law, the result would be the same.  Local 542 Mot. Summ. J. at 6-8.  The DRBA similarly indicated in a footnote in its summary judgment brief that choice-of-law is not an issue.  See DRBA Mot. Summ. J. at 10 n.8.  Thus, it is unclear as to what federal common law Local 542 seeks to invoke in support of subject matter jurisdiction.

Although the Court does not decide the issue, the Court believes that if an independent basis for subject-matter jurisdiction existed, the Federal Arbitration Act, 9 U.S.C. § 10, and binding case law relating thereto would govern the scope of this Court's review of the arbitrator's decision.  However, "the Federal Arbitration Act does not independently confer subject matter jurisdiction on the federal courts." In re Kaplan, 143 F.3d 807, 814 (3d Cir. 1998).  Thus, the Court cannot ground subject-matter jurisdiction upon the unspecified federal common law invoked by Local 542.

### IV.   CONCLUSION

For the foregoing reasons, the Complaint will be **DISMISSED** for lack of subject-matter jurisdiction.  The pending motions for summary judgment will therefore be **DISMISSED AS MOOT**.  An appropriate Order shall issue.

Dated: 5/12/2014                                      /s/ Robert B. Kugler
                                                                                              ROBERT B. KUGLER
                                                                                              United States District Judge